UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

In re                                              ) Case No. _____
                                                   )
                                                   ) NOTICE OF MOTION FOR RELIEF
                                                   ) FROM (Check all that apply):
                                                   )      AUTOMATIC STAY IN A **CHAPTER 7/13** CASE
Debtor(s)                                          )      CHAPTER **13** CODEBTOR STAY

I.  YOU ARE NOTIFIED that a Motion was filed by _____, the moving party, for (Check all that apply):

    Relief from the automatic stay protecting the debtor(s) and debtor's property, as provided by 11 USC §362.

    Relief from the stay protecting the codebtor, whose name and service address are: _____
    _____,
    and codebtor's property as provided by 11 USC §1301.

II. A copy of the Motion is attached.  The name and service address of the moving party's attorney (or moving party, if no attorney) are:_____
    _____

III. If you wish to resist the Motion, you must, within 14 days of the service date shown below, file the following with the Clerk of the U.S. Bankruptcy Court [NOTE: if you mail or have a courier deliver the Response to the Court for filing, you must mail it or initiate the delivery sufficiently before the deadline so that it will actually be received at the Court on time.]

    A. A written response that states the facts supporting the opposition to the Motion by filling in the applicable "Response" portions on a copy of the original Motion. [NOTE: If the Response will be electronically filed, the Response must be prepared using the "fillable" pdf version of the original Motion unless the Motion was filed on paper and could not be electronically obtained from the movant];

<u>And</u> B. A fully completed Notice of Hearing using Local Form #721, including the date and time of the hearing.  Available hearing dates and times are posted on the Court's website at www.orb.uscourts.gov under the "Hearings" heading. If you do not have internet access, please call the Court at (503) 326-1500 or (541) 431-4000 and press "0" to obtain the required forms and hearing information from a Court clerk.

IV. <u>Failure to Respond and Serve Proper Notice of Hearing</u>.  If you fail to file a timely response and a proper Notice of Hearing, then either:

    A. The automatic stay will expire as to the debtor(s) pursuant to 11 USC §362(e) 30 days after the Motion was originally filed, and/or the stay protecting the codebtor will automatically expire pursuant to 11 USC §1301(d) 20 days after the date the Motion was originally filed;

<u>Or</u> B. The Court may sign an ex parte order, submitted by the moving party on Local Form #720.90, granting relief from the debtor stay and/or codebtor stay.

                        Clerk, U.S. Bankruptcy Court
                        [NOTE:  If the 5-digit portion of the Case No. begins with "3" or "4", mail to 1001 SW 5th Ave. #700, Portland OR 97204; <u>OR</u> if it begins with "6" or "7", mail to 405 E 8th Ave #2600, Eugene OR 97401.]

I certify that:  (1) The Motion was prepared using the Court's "fillable" PDF version of Local Form #720.80; and (2) that on _____ I served copies of this Notice and the Motion on the Debtor(s), any codebtor at the address listed above, Trustee, U.S. Trustee, members of any committee elected pursuant to 11 USC §705, and their respective attorneys.

                        _____
                        Signature of Moving Party or Attorney          **(OSB#)**

720 (12/1/13)

In re                           )  Case No._____
                               )
                               )  (CHECK ALL APPLICABLE BOXES)
                               )    Ch. 7/13 Motion for Relief from
                               )        DEBTOR    Chapter **13** CODEBTOR Stay
                               )    Filed by Creditor:
                               )  _____
                               )  *Response to Stay Motion filed by Respondent:*
Debtor(s)                  )  _____

1. **Debt, Default, Other Encumbrances, Description and Value of Collateral** *(To be completed by creditor)*

    a. Description of collateral (car model, year, VIN, property address):

    b. Amount of debt: $_____ consisting of principal: $_____; interest: $_____; other:

    c. Description, amount and priority of other encumbrances on collateral.  If not known, include applicable information from debtor's schedules if available on PACER:

        Total debt secured by collateral (total 1.b. + 1.c.):  $_____.

    d. Value of collateral:  $_____.
       Equity in collateral:  $_____, after deducting $_____ liquidation costs.

    e. Current monthly payment:  $_____.    *Represents the current payment which is due on 01/01/2015.

    f. If Chapter 13: 01/06/2015

        (1) $\_\_        \_\_ postpetition default consisting of (e.g., $<u>7,953.04</u> payments, $\_\_\_\_ late charges, $<u>275.00</u> fees):

        (2) $_____ prepetition default consisting of    amounts specified in proof of claim, or,    consisting of:

    g. If Chapter 7, total amount of default $_____.

***RESPONSE*** *(Identify specific items disputed and specify what you contend are the pertinent facts including why there is a postpetition default, if applicable) (to be completed by respondent):*

2. **Relief from stay should be granted because (check all that apply):** *(To be completed by creditor)*

Lack of adequate protection because of failure to make sufficient adequate protection payments and lack of a sufficient equity cushion.

Lack of insurance on collateral.

No equity in the collateral and the property is not necessary for an effective reorganization.

Failure of debtor to make Chapter 13 plan payments.

Failure of debtor to make payments to secured creditor required by ¶4 of Chapter 13 plan.

Other (describe):

**RESPONSE** *(Specify why relief from stay should be denied. If respondent proposes to cure a postpetition default, detail the cure by attaching a proposed order using Local Form (LBF) #720.90 available at www.orb.uscourts.gov under Forms/Local Forms) (to be completed by respondent):*

3. **Background** *(To be completed by creditor)*

   a. Date petition filed: _____ Current Chapter: _____ (7 or 13)
   If 13, current plan date _____ Confirmed: Yes No
   If 13, treatment of creditor's prepetition claim(s) in plan:

   If 7, debtor has has not stated on Local Form (LBF) #521 or #521.05 that debtor intends to surrender the collateral.

   b. Creditor has a lien on the collateral by virtue of (check all applicable sections and also see ¶6 below):

   Security agreement, trust deed or land sale contract dated _____, and, if applicable, an assignment of said interest to creditor. The security interest was perfected as required by applicable law on _____.

   Retail installment contract dated _____, and, if applicable, an assignment of said interest to creditor. The security interest was perfected on the certificate of title on _____.

   Other (describe):

**RESPONSE** *(Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

4. **Request for Relief from Codebtor Stay** (Only Chapter **13**)

   a. _____, whose address is _____
   _____, is a codebtor on the obligation described above, but is not a debtor in this bankruptcy.

   b. Creditor should be granted relief from the codebtor stay because (check all applicable boxes):    codebtor received the consideration for the claim held by creditor,    debtor's plan does not propose to pay creditor's claim in full,    creditor's interest would be irreparably harmed by continuation of the codebtor stay as a result of the default(s) described above and/or    because:

Case 12-32800-tmb13    Doc 37    Filed 01/20/15

***RESPONSE*** *(Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

5. **Other Pertinent Information** *(To be completed by creditor, if applicable):*

***RESPONSE*** *(Identify any disputed items and specify the pertinent facts) (to be completed by respondent):*

6. **Relief Requested (check all applicable sections):** *(To be completed by creditor)*

Creditor requests relief from the automatic stay to allow it to foreclose its lien on the above identified collateral, and, if necessary, to take appropriate action to obtain possession of the collateral.

Creditor has a security interest in real property and requests relief from stay with respect to an act against such property and that the relief be binding in any other bankruptcy case purporting to affect such real property filed not later than 2 years after the date of the entry of an order granting this motion. (*If you check this box, you must complete ¶5 above to support this request. If you do not do so, the Court will not grant relief binding in any other bankruptcy case.*)

Creditor requests that the 14-day stay provided by FRBP 4001(a)(3) be waived based on the following cause:

Other (describe and explain cause):

***RESPONSE*** *(Identify any disputed items and specify the pertinent facts. If respondent agrees to some relief, attach a proposed order using Local Form (LBF) #720.90 available at www.orb.uscourts.gov under Forms/Local Forms) (to be completed by respondent):*

7. **Documents:**

   **If creditor claims to be secured in ¶3.b. above** creditor has attached to and filed with this motion a copy of the documents creating and perfecting the security interest, if not previously attached to a proof of claim.

   **If this case is a Chapter 13 case and the collateral as to which creditor seeks stay relief is real property**, creditor has attached to and filed with this motion a postpetition payment history current to a date not more than 30 days before this motion is filed, showing for each payment the amount due, the date the payment was received, the amount of the payment, and how creditor applied the payment.

**RESPONDENT requests creditor provide** Respondent with the following document(s), if any marked, which are pertinent to this response:
   Postpetition payment history if not required above.
   Documents establishing that creditor owns the debt described in ¶1 or is otherwise a proper party to bring this motion.
   Other document(s) (specific description):

CREDITOR/ATTORNEY

Signature:_____
Name:_____
Address:_____
_____
Email Address:_____
Phone No:_____
OSB#:_____

RESPONDENT **DEBTOR**/ATTORNEY *(by signing, the respondent also certifies that [s]he has not altered the information completed by creditor)*

Signature:_____
Name:_____
Address:_____
_____
Email Address:_____
Phone No:_____
OSB#:_____

RESPONDENT **CODEBTOR**/ATTORNEY *(by signing, the respondent also certifies that [s]he has not altered the information completed by creditor)*

Signature:_____
Name:_____
Address:_____
_____
Email Address:_____
Phone No:_____
OSB#:_____

*YOU ARE HEREBY NOTIFIED THAT THE CREDITOR IS ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.*

Nathan Smith #120112
MALCOLM ♦ CISNEROS, A Law Corporation
2112 Business Center Drive, Second Floor
Irvine, California 92612
Phone: (949) 252-9400
Facsimile: (949) 252-1032
Nathan@mclaw.org
Attorneys for Movant

**UNITED STATES BANKRUPTCY COURT**

**DISTRICT OF OREGON**

| | |
|---|---|
| In re:<br>Russell Dean Vandenberg and JoAnn Gloria Vandenberg,<br><br>Debtors,<br><br>National Residential Assets Corp.,<br><br>Movant,<br>vs.<br>Russell Dean Vandenberg and JoAnn Gloria Vandenberg, Debtors, and Wayne Godare, Trustee,<br><br>Respondents. | Chapter 13<br><br>Bankruptcy Case No. 12-32800-tmb13 |

**DECLARATION IN SUPPORT OF**

**MOTION FOR RELIEF FROM AUTOMATIC STAY**

I, Felicia Goms, declare under penalty of perjury as follows:

1.      I am a/an Assistant Vice President of Bank of America, N.A. ("BANA") and am authorized to sign this declaration on behalf of BANA as servicing agent for National Residential Assets Corp.. This declaration is provided in support of the Motion for Relief from Stay (the "Motion") filed contemporaneously herewith.

2.      As part of my job responsibilities for BANA, I have personal knowledge of and am familiar with the types of records maintained by BANA in connection with the loan that is the

DECLARATION IN SUPPORT OF MOTION FOR RELIEF 1                    LT/B23165

subject of the Motion (the "Loan") and the procedures for creating those types of records. I have access to and have reviewed the books, records and files of BANA that pertain to the Loan and extensions of credit given to Debtor concerning the property securing such Loan.

3. The information in this declaration is taken from BANA's business records regarding the Loan. The records are: (a) made at or near the time of the occurrence of the matters recorded by persons with personal knowledge of the information in the business record, or from information transmitted by persons with personal knowledge; (b) kept in the course of BANA's regularly conducted business activities; and (c) it is the regular practice of BANA to make such records.

4. Russell Vandenberg and JoAnn Vandenberg have executed and delivered and are otherwise obligated with respect to that certain promissory note referenced in the Motion (the "Note"). Pursuant to that certain Deed of Trust referenced in the Motion (the "Deed of Trust"), all obligations of the Debtors under and with respect to the Note and the Deed of Trust are secured by the property referenced in the Motion.

5. As January 6, 2015, there are one or more defaults in paying post-petition amounts due with respect to the Note.

6. As of January 6, 2015, the unpaid principal balance of the Note is $390,873.98.

7. The following chart sets forth those postpetition payments, due pursuant to the terms of the Note, that have been missed by the Debtors as of January 6, 2015:

| Number of Missed Payments | From | To | Missed Principal and Interest | Missed Escrow (if applicable) | Monthly Payment Amount | Total Amounts Missed |
|---|---|---|---|---|---|---|
| 1 | 11/01/2014 | 11/01/2014 | $2,080.69 | $586.61 | $2,667.30 | $2,667.30 |
| 2 | 12/01/2014 | 01/01/2015 | $2,056.26 | $586.61 | $2,642.87 | $5,285.74 |
| Less postpetition partial payments (suspense balance): | | | | | | ($-557.19) |

Total: $7,395.85

8. As of January 6, 2015, the total postpetition arrearage/delinquency is $7,670.85, consisting of the foregoing total of missed postpetition payments in the amount of $7,395.85, plus

the following postpetition fees.[1] This is the amount necessary to cure any post-petition default on or about the date hereof.

| Description | Amount[2] |
| --- | --- |
| BK-PROOF OF CLAIM-R | $275.00 |

9.    Upon information and belief, as of January 6, 2015 the unpaid amount of the prepetition arrearage and any other amounts to be cured under the confirmed plan is not applicable due to the debtor being current at the time of filing.

10.    The next payment under the terms of the Note will come due on February 1, 2015 and is in the amount of $2,642.87.

11.    Attached hereto as Exhibit "A" is a postpetition payment history.

Pursuant to 28 U.S.C. § 1746, I hereby declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.   Executed this 16th day of January, 20 15 at Simi Valley (city), California (state).

/s/ Felicia Goms

Name: Felicia Goms

Title: Assistant Vice President

---

[1]  The total of missed postpetition payments for this impounded loan include any missed escrow payments. Such missed escrow payments include amounts assessed for taxes and insurance and any previously assessed escrow shortage amount (if applicable). To avoid duplication, postpetition advances (if any) made for insurance, real estate taxes, or similar charges are not listed separately to the extent such advances would have been paid from the missed escrow payments. As part of the next annual RESPA analysis, the Bank will determine whether the escrow payments assessed to the debtor (including the missed escrow payments) result in a projected escrow shortage or overage. All rights are hereby reserved to assert or request any escrow amounts in accordance with RESPA and the total postpetition arrearage/delinquency is qualified accordingly. In addition, the amounts set forth herein do not include any legal fees or expenses of counsel incurred by Movant in connection with seeking the relief requested in the Motion.

[2]  Any post-petition fees and/or costs included herein are for the purpose of disclosure. Such fees and/or costs may be subject to the provisions of F.R.B.P. 3002.1 (e), and nothing in this Motion or the associated Supplemental Declaration is intended to deprive the Debtor(s) of any such

DECLARATION IN SUPPORT OF MOTION FOR RELIEF 3                    LT/B23165

# Exhibit "A"

Exhibit "A"

| Post-Petition Loan History |
|---|

Debtor(s): **Vandenberg**   Filing Date: <u>4/13/2012</u>

Case No: <u>12-32800-tmb13</u>

| Due Date: | Principal & Interest: | Escrow: | Late Charge: | Total Amount Due: | Date Received | Amt Received | Balance Due | |
|---|---|---|---|---|---|---|---|---|
| | | | $ - | $ - | Apr-16-12 | $ 2,550.00 | $ (2,550.00) | |
| May-01-12 | $ 2,106.11 | $ 427.48 | $ - | $ 2,533.59 | May-02-12 | $ 2,600.00 | $ (2,616.41) | |
| | | | | $ - | | $ (82.82) | $ (2,533.59) | Funds applied to Principal and Interest |
| Jun-01-12 | $ 2,106.11 | $ 420.47 | $ - | $ 2,526.58 | Jun-05-12 | $ 2,600.00 | $ (2,607.01) | |
| | | | | $ - | | $ (73.42) | $ (2,533.59) | Funds applied to Principal and Interest |
| Jul-01-12 | $ 2,106.11 | $ 420.47 | $ - | $ 2,526.58 | Jul-05-12 | $ 2,526.58 | $ (2,533.59) | |
| Aug-01-12 | $ 2,106.11 | $ 420.47 | $ - | $ 2,526.58 | Aug-03-12 | $ 2,526.58 | $ (2,533.59) | |
| Sep-01-12 | $ 2,106.11 | $ 420.47 | $ - | $ 2,526.58 | Sep-05-12 | $ 2,526.58 | $ (2,533.59) | |
| Oct-01-12 | $ 2,106.11 | $ 420.47 | $ - | $ 2,526.58 | Oct-12-12 | $ 2,526.58 | $ (2,533.59) | |
| Nov-01-12 | $ 2,106.11 | $ 420.47 | $ - | $ 2,526.58 | Nov-02-12 | $ 2,526.58 | $ (2,533.59) | |
| Dec-01-12 | $ 2,132.12 | $ 420.47 | $ - | $ 2,552.59 | Dec-10-12 | $ 2,526.58 | $ (2,507.58) | |
| Jan-01-13 | $ 2,132.12 | $ 420.47 | $ - | $ 2,552.59 | Jan-14-13 | $ 2,526.58 | $ (2,481.57) | |
| Feb-01-13 | $ 2,132.12 | $ 420.47 | $ - | $ 2,552.59 | Feb-12-13 | $ (5,105.18) | $ 5,176.20 | |
| | | | | $ - | Feb-12-13 | $ 2,552.59 | $ 2,623.61 | |
| | | | | $ - | Feb-12-13 | $ 2,552.59 | $ 71.02 | |
| | | | | $ - | Feb-12-13 | $ 2,552.59 | $ (2,481.57) | |
| Mar-01-13 | $ 2,132.12 | $ 420.47 | $ - | $ 2,552.59 | Mar-29-13 | $ 2,552.59 | $ (2,481.57) | |
| Apr-01-13 | $ 2,132.12 | $ 420.47 | $ - | $ 2,552.59 | Apr-30-13 | $ 2,552.59 | $ (2,481.57) | |
| May-01-13 | $ 2,132.12 | $ 420.47 | $ - | $ 2,552.59 | May-30-13 | $ 2,552.59 | $ (2,481.57) | |
| Jun-01-13 | $ 2,132.12 | $ 478.02 | $ - | $ 2,610.14 | Jun-21-13 | $ (2,552.59) | $ 2,681.16 | |
| | | | | $ - | Jun-21-13 | $ 2,552.59 | $ 128.57 | |
| | | | | $ - | Jun-28-13 | $ 2,552.59 | $ (2,424.02) | |
| Jul-01-13 | $ 2,132.12 | $ 478.02 | $ - | $ 2,610.14 | Jul-30-13 | $ 2,610.14 | $ (2,424.02) | |
| Aug-01-13 | $ 2,132.12 | $ 478.02 | $ - | $ 2,610.14 | Aug-30-13 | $ 2,610.14 | $ (2,424.02) | |
| Sep-01-13 | $ 2,132.12 | $ 478.02 | $ - | $ 2,610.14 | | | $ 186.12 | |
| Oct-01-13 | $ 2,132.12 | $ 478.02 | $ - | $ 2,610.14 | Oct-07-13 | $ 2,610.14 | $ 186.12 | |
| Nov-01-13 | $ 2,132.12 | $ 478.02 | $ - | $ 2,610.14 | Nov-21-13 | $ 2,610.14 | $ 186.12 | |
| | | | | $ - | Nov-21-13 | $ 2,610.14 | $ (2,424.02) | |
| Dec-01-13 | $ 2,080.69 | $ 478.02 | $ - | $ 2,558.71 | | | $ 134.69 | |
| Jan-01-14 | $ 2,080.69 | $ 478.02 | $ - | $ 2,558.71 | Jan-15-14 | $ 2,610.14 | $ 83.26 | |
| Feb-01-14 | $ 2,080.69 | $ 478.02 | $ - | $ 2,558.71 | Feb-14-14 | $ 2,610.14 | $ 31.83 | |
| | | | | $ - | Feb-27-14 | $ 345.30 | $ (313.47) | |
| Mar-01-14 | $ 2,080.69 | $ 478.02 | $ - | $ 2,558.71 | | | $ 2,245.24 | |
| Apr-01-14 | $ 2,080.69 | $ 478.02 | $ - | $ 2,558.71 | Apr-29-14 | $ 2,558.71 | $ 2,245.24 | |
| May-01-14 | $ 2,080.69 | $ 478.02 | $ - | $ 2,558.71 | | | $ 4,803.95 | |
| Jun-01-14 | $ 2,080.69 | $ 586.61 | $ - | $ 2,667.30 | Jun-05-14 | $ 352.31 | $ 7,118.94 | |
| Jul-01-14 | $ 2,080.69 | $ 586.61 | $ - | $ 2,667.30 | Jul-24-14 | $ 2,558.71 | $ 7,227.53 | |
| | | | | $ - | Jul-24-14 | $ 2,558.71 | $ 4,668.82 | |
| | | | | $ - | Jul-24-14 | $ 2,558.71 | $ 2,110.11 | |
| | | | | $ - | Jul-30-14 | $ 2,667.30 | $ (557.19) | |
| Aug-01-14 | $ 2,080.69 | $ 586.61 | $ - | $ 2,667.30 | | | $ 2,110.11 | |
| Sep-01-14 | $ 2,080.69 | $ 586.61 | $ - | $ 2,667.30 | Sep-08-14 | $ 2,667.30 | $ 2,110.11 | |
| Oct-01-14 | $ 2,080.69 | $ 586.61 | $ - | $ 2,667.30 | Oct-23-14 | $ 2,667.30 | $ 2,110.11 | |
| Nov-01-14 | $ 2,080.69 | $ 586.61 | | $ 2,667.30 | | | $ 4,777.41 | |
| Dec-01-14 | $ 2,056.26 | $ 586.61 | $ - | $ 2,642.87 | Dec-31-14 | $ 2,667.30 | $ 4,752.98 | |
| Jan-01-14 | $ 2,056.26 | $ 586.61 | | $ 2,642.87 | | | $ 7,395.85 | |
| Totals | $ 69,409.01 | $ 15,902.24 | $ - | $ 85,311.25 | | $ 77,915.40 | | |
| Outstanding Debt: | | | | $ 7,395.85 | | | | |

Borrower Name : RUSSELL VANDENBERG
Address : 2184 SKYLINE DR

## BANKRUPTCY MFR LEDGER

| Description | Post-Petition Date Satisfied | Transaction Date | Amount Due | Funds Received | Escrow | Principal & Interest | Optional Products | Buydown | Post-Petition Partial Amount | Post-Petition Partial Balance |
|---|---|---|---|---|---|---|---|---|---|---|
| 10 - PAYMENT APPLIED | 5/1/2012 | 4/16/2012 | $2,533.59 | $2,550.00 | $427.48 | $2,106.11 | $0.00 | $0.00 | $16.41 | $16.41 |
| 10 - PAYMENT APPLIED | 6/1/2012 | 5/2/2012 | $2,526.58 | $2,600.00 | $420.47 | $2,106.11 | $0.00 | $0.00 | $73.42 | $89.83 |
| 20 - MISC | | 5/30/2012 | $0.00 | $0.00 | $0.00 | $82.82 | $0.00 | $0.00 | ($82.82) | $7.01 |
| 20 - MISC | | 6/6/2012 | $0.00 | $0.00 | $0.00 | $73.42 | $0.00 | $0.00 | $73.42 | $80.43 |
| 10 - PAYMENT APPLIED | 7/1/2012 | 6/27/2012 | $2,526.58 | $2,526.58 | $420.47 | $2,106.11 | $0.00 | $0.00 | ($73.42) | $7.01 |
| 10 - PAYMENT APPLIED | 8/1/2012 | 7/5/2012 | $2,526.58 | $2,526.58 | $420.47 | $2,106.11 | $0.00 | $0.00 | $0.00 | $7.01 |
| 10 - PAYMENT APPLIED | 9/1/2012 | 8/2/2012 | $2,526.58 | $2,526.58 | $420.47 | $2,106.11 | $0.00 | $0.00 | $0.00 | $7.01 |
| 10 - PAYMENT APPLIED | 10/1/2012 | 9/5/2012 | $2,526.58 | $2,526.58 | $420.47 | $2,106.11 | $0.00 | $0.00 | $0.00 | $7.01 |
| 10 - PAYMENT APPLIED | 11/1/2012 | 10/12/2012 | $2,526.58 | $2,526.58 | $420.47 | $2,106.11 | $0.00 | $0.00 | $0.00 | $7.01 |
| 10 - FUNDS RECEIVED | | 11/2/2012 | $0.00 | $2,526.58 | $0.00 | $0.00 | $0.00 | $0.00 | $2,526.58 | $2,533.59 |
| 10 - PAYMENT APPLIED | 12/1/2012 | 12/10/2012 | $2,552.59 | ($5,105.18) | $420.47 | $2,132.12 | $0.00 | $0.00 | ($26.01) | $2,507.58 |
| 10 - PAYMENT APPLIED | 1/1/2013 | 1/14/2013 | $2,552.59 | $2,552.59 | $420.47 | $2,132.12 | $0.00 | $0.00 | ($26.01) | $2,481.57 |
| 20 - MISC REVERSAL | | 2/12/2013 | $0.00 | $2,552.59 | $0.00 | $0.00 | $0.00 | $0.00 | ($5,105.18) | ($2,623.61) |
| 10 - FUNDS RECEIVED | | 2/12/2013 | $0.00 | $2,552.59 | $0.00 | $0.00 | $0.00 | $0.00 | $2,552.59 | ($71.02) |
| 10 - FUNDS RECEIVED | | 2/12/2013 | $0.00 | $2,552.59 | $0.00 | $0.00 | $0.00 | $0.00 | $2,552.59 | $2,481.57 |
| 10 - PAYMENT APPLIED | 2/1/2013 | 2/12/2013 | $2,552.59 | $2,552.59 | $420.47 | $2,132.12 | $0.00 | $0.00 | $0.00 | $2,481.57 |
| 10 - PAYMENT APPLIED | 3/1/2013 | 3/29/2013 | $2,552.59 | $2,552.59 | $420.47 | $2,132.12 | $0.00 | $0.00 | $0.00 | $2,481.57 |
| 10 - PAYMENT APPLIED | 4/1/2013 | 4/30/2013 | $2,552.59 | $2,552.59 | $420.47 | $2,132.12 | $0.00 | $0.00 | $0.00 | $2,481.57 |
| 10 - PAYMENT APPLIED | 5/1/2013 | 5/30/2013 | $2,552.59 | $2,552.59 | $420.47 | $2,132.12 | $0.00 | $0.00 | $0.00 | $2,481.57 |
| 40 - FUND REVERSAL | | 6/21/2013 | $0.00 | ($2,552.59) | $0.00 | $0.00 | $0.00 | $0.00 | ($2,552.59) | ($671.02) |
| 20 - MISC | | 6/21/2013 | $0.00 | $2,552.59 | $0.00 | $0.00 | $0.00 | $0.00 | ($57.55) | $2,424.02 |
| 10 - PAYMENT APPLIED | 6/1/2013 | 6/28/2013 | $2,610.14 | $2,610.14 | $478.02 | $2,132.12 | $0.00 | $0.00 | $0.00 | $2,424.02 |
| 10 - PAYMENT APPLIED | 7/1/2013 | 7/30/2013 | $2,610.14 | $2,610.14 | $478.02 | $2,132.12 | $0.00 | $0.00 | $0.00 | $2,424.02 |
| 10 - PAYMENT APPLIED | 8/1/2013 | 8/30/2013 | $2,610.14 | $2,610.14 | $478.02 | $2,132.12 | $0.00 | $0.00 | $0.00 | $2,424.02 |
| 10 - PAYMENT APPLIED | 9/1/2013 | 10/7/2013 | $2,610.14 | $2,610.14 | $478.02 | $2,132.12 | $0.00 | $0.00 | $2,610.14 | $5,034.16 |
| 10 - FUNDS RECEIVED | | 11/21/2013 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $5,034.16 |
| 10 - PAYMENT APPLIED | 10/1/2013 | 11/21/2013 | $2,610.14 | $2,610.14 | $478.02 | $2,132.12 | $0.00 | $0.00 | ($2,610.14) | ($2,610.14) |
| 10 - PAYMENT APPLIED | 11/1/2013 | 11/21/2013 | $2,610.14 | $2,610.14 | $478.02 | $2,132.12 | $0.00 | $0.00 | $51.43 | $2,475.45 |
| 10 - PAYMENT APPLIED | 12/1/2013 | 1/15/2014 | $2,558.71 | $2,558.71 | $478.02 | $2,080.69 | $0.00 | $0.00 | $51.43 | $2,526.88 |
| 10 - PAYMENT APPLIED | 1/1/2014 | 2/14/2014 | $2,558.71 | $2,558.71 | $478.02 | $2,080.69 | $0.00 | $0.00 | ($2,213.41) | $313.47 |
| 10 - PAYMENT APPLIED | 2/1/2014 | 2/27/2014 | $0.00 | $345.30 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $313.47 |
| 10 - FUNDS RECEIVED | | 4/29/2014 | $0.00 | $352.31 | $0.00 | $0.00 | $0.00 | $0.00 | $352.31 | $665.78 |
| 20 - MISC | | 6/5/2014 | $0.00 | $2,558.71 | $0.00 | $0.00 | $0.00 | $0.00 | $2,558.71 | $3,224.49 |
| 10 - FUNDS RECEIVED | | 7/24/2014 | $0.00 | $2,558.71 | $0.00 | $0.00 | $0.00 | $0.00 | $2,558.71 | $5,783.20 |
| 10 - FUNDS RECEIVED | | 7/24/2014 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | ($2,558.71) | $3,224.49 |
| 10 - PAYMENT APPLIED | 4/1/2014 | 7/24/2014 | $2,558.71 | $2,667.30 | $478.02 | $2,080.69 | $0.00 | $0.00 | ($2,667.30) | $557.19 |
| 10 - PAYMENT APPLIED | 5/1/2014 | 7/24/2014 | $2,558.71 | $0.00 | $478.02 | $2,080.69 | $0.00 | $0.00 | $0.00 | $557.19 |
| 10 - PAYMENT APPLIED | 6/1/2014 | 7/30/2014 | $2,667.30 | $2,667.30 | $586.61 | $2,080.69 | $0.00 | $0.00 | $0.00 | $557.19 |
| 10 - PAYMENT APPLIED | 7/1/2014 | 9/8/2014 | $2,667.30 | $2,667.30 | $586.61 | $2,080.69 | $0.00 | $0.00 | $0.00 | $557.19 |
| 10 - PAYMENT APPLIED | 8/1/2014 | 10/23/2014 | $2,667.30 | $2,667.30 | $586.61 | $2,080.69 | $0.00 | $0.00 | $0.00 | $557.19 |
| 10 - PAYMENT APPLIED | 9/1/2014 | 12/31/2014 | $2,667.30 | $2,667.30 | $586.61 | $2,080.69 | $0.00 | $0.00 | $0.00 | $557.19 |
| 10 - PAYMENT APPLIED | 10/1/2014 | 12/31/2014 | $2,667.30 | $2,667.30 | $586.61 | $2,080.69 | $0.00 | $0.00 | $0.00 | $557.19 |

BANKRUPTCY MFR LEDGER

Borrower Name : RUSSELL VANDENBERG
Address : 2184 SKYLINE DR

This ledger is for bankruptcy purposes only. The Bank maintains this ledger for the period during which the debtor is making payments under the terms of a chapter 13 bankruptcy plan. The Bank separately maintains an accounting system that tracks payments according to the terms of the loan documents. That contextually-based system may be used for servicing the mortgage in the event this debtor's bankruptcy case is dismissed, converted to chapter7, or the automatic stay is lifted prior to the debtor's completing the payments required under the plan.



# ADJUSTABLE RATE NOTE

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.**

OCTOBER 13, 2005       SEASIDE            OR
     [Date]                   [City]                [State]
2184 SKYLINE DRIVE, SEASIDE, OR 97138

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $     440,000.00     (this amount is called "Principal"), plus interest, to the order of Lender. Lender is  BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      5.625      %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note. Interest will be calculated on a     360 DAY basis.

## 3. PAYMENTS

*(Please check box for interest-only payments.)*

[X] Beginning on the     FIRST     day of DECEMBER, 2005 and on the    FIRST day of every month thereafter until the     FIRST     day of DECEMBER, 2010 , I will pay only the interest on the unpaid principal balance of the Note. Thereafter, I will pay principal and interest by making payments every month as provided below.

(A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the     FIRST     day of each month beginning on DECEMBER 01, 2005

I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   NOVEMBER 01, 2035         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at  BANK OF AMERICA, N.A., P.O. BOX 17404, BALTIMORE, MD 21297-1404
or at a different place if required by the Note Holder.

MULTISTATE ADJUSTABLE RATE NOTE – Single Family

BS899N (0301)
MGN1 10/13/05 12:22 PM 

VMP MORTGAGE FORMS - (800)521-7291

 Redacted

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $      2,062.50      . This amount may change.

**(C) Monthly Payment Changes**
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

**(A) Change Dates**
The interest rate I will pay may change on the FIRST                 day of  NOVEMBER,  2010             , and on that day every    12TH          month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is:
THE ONE-YEAR LONDON INTERBANK OFFERED RATE ("LIBOR") WHICH IS THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE-YEAR U.S. DOLLAR-DENOMINATED DEPOSITS IN THE LONDON MARKET, AS PUBLISHED IN THE WALL STREET JOURNAL. THE MOST RECENT INDEX FIGURE AVAILABLE AS OF THE DATE 45 DAYS BEFORE EACH CHANGE DATE IS CALLED THE "CURRENT INDEX."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding  TWO AND ONE-QUARTER                     percentage points (        2.250    %) to the Current Index. The Note Holder will then round the result of this addition to the  ☐ Nearest  ☒ Next Highest  ☐ Next Lowest ONE-EIGHTH OF ONE PERCENTAGE POINT                    (      0.125       %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
   ☒ The "Interest-Only Period" is the period from the date of this Note through  NOVEMBER 01, 2010      . For the Interest-Only Period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.
   The "Amortization Period" is the period after the Interest-Only Period. For the Amortization Period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
*[Please check appropriate boxes; if no box is checked, there will be no maximum limit on changes.]*
   ☐ (1)  There will be no maximum limit on interest rate changes.

Redacted

☐ (2) The interest rate I am required to pay at the first Change Date will not be greater than _____ % or less than _____ %.

☐ (3) My interest rate will never be increased or decreased on any single Change Date by more than _____ percentage points ( _____ %) from the rate of interest I have been paying for the preceding period.

☒ (4) My interest rate will never be greater than 10.625 %, which is called the "Maximum Rate."

☐ (5) My interest rate will never be less than _____ %, which is called the "Minimum Rate."

☐ (6) My interest rate will never be less than the initial interest rate.

☒ (7) The interest rate I am required to pay at the first Change Date will not be greater than 10.625 % or less than 2.250 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage points ( 2.000 %) from the rate of interest I have been paying for the preceding period.

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I HAVE THE RIGHT TO MAKE PAYMENTS OF PRINCIPAL AT ANY TIME BEFORE THEY ARE DUE. A PAYMENT OF PRINCIPAL ONLY IS KNOWN AS A "PREPAYMENT." WHEN I MAKE A PREPAYMENT, I WILL TELL THE NOTE HOLDER IN WRITING THAT I AM DOING SO. I MAY NOT DESIGNATE A PAYMENT AS A PREPAYMENT IF I HAVE NOT MADE ALL THE MONTHLY PAYMENTS DUE UNDER THIS NOTE.

I MAY MAKE A FULL PREPAYMENT OR PARTIAL PREPAYMENTS WITHOUT PAYING A PREPAYMENT CHARGE. AFTER PAYING ANY LATE FEES OR OUTSTANDING FEES THAT I OWE, THE NOTE HOLDER WILL USE MY PREPAYMENTS TO REDUCE THE AMOUNT OF PRINCIPAL THAT I OWE UNDER THIS NOTE. HOWEVER, THE NOTE HOLDER MAY APPLY MY PREPAYMENT TO THE ACCRUED AND UNPAID INTEREST ON THE PREPAYMENT AMOUNT BEFORE APPLYING MY PREPAYMENT TO REDUCE THE PRINCIPAL AMOUNT OF THE NOTE. IF I MAKE A PARTIAL PREPAYMENT, THERE WILL BE NO CHANGES IN THE DUE DATE OF MY MONTHLY PAYMENT UNLESS THE NOTE HOLDER AGREES IN WRITING TO THOSE CHANGES. IF THE PARTIAL PREPAYMENT IS MADE DURING THE PERIOD WHEN MY MONTHLY PAYMENTS CONSIST ONLY OF INTEREST, THE AMOUNT OF THE MONTHLY PAYMENT WILL DECREASE FOR THE REMAINDER OF THE TERM WHEN MY PAYMENTS CONSIST ONLY OF INTEREST. IF THE PARTIAL PREPAYMENT IS MADE DURING THE PERIOD WHEN MY PAYMENTS CONSIST OF PRINCIPAL AND INTEREST, MY PARTIAL PREPAYMENT MAY REDUCE THE AMOUNT OF MY MONTHLY PAYMENTS AFTER THE FIRST CHANGE DATE FOLLOWING MY PARTIAL PREPAYMENT. HOWEVER, ANY REDUCTION DUE TO MY PARTIAL PREPAYMENT MAY BE OFFSET BY AN INTEREST RATE INCREASE.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15
calendar days after the date it is due, I will pay a late charge to the Note Holder. The
amount of the charge will be    5.0    % of my overdue payment of principal and interest. I will
pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue
amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which
has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on
which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as
described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the
right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by
applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be
given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different
address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it
by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am
given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises
made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or
endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the
obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this
Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us
together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of
Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice
of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not
been paid.

## 11. SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security
Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses
which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how
and under what conditions I may be required to make immediate payment in full of all amounts I owe under this
Note. Some of those conditions are described as follows:

(A) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION
4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(B) BELOW SHALL THEN CEASE TO BE IN
EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:


Redacted

E

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL READ AS FOLLOWS:

TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER. AS USED IN THIS SECTION 18, "INTEREST IN THE PROPERTY" MEANS ANY LEGAL OR BENEFICIAL INTEREST IN THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, THOSE BENEFICIAL INTERESTS TRANSFERRED IN A BOND FOR DEED, CONTRACT FOR DEED, INSTALLMENT SALES CONTRACT OR ESCROW AGREEMENT, THE INTENT OF WHICH IS THE TRANSFER OF TITLE BY BORROWER AT A FUTURE DATE TO A PURCHASER.

IF ALL OR ANY PART OF THE PROPERTY OR ANY INTEREST IN THE PROPERTY IS SOLD OR TRANSFERRED (OR IF BORROWER IS NOT A NATURAL PERSON AND A BENEFICIAL INTEREST IN BORROWER IS SOLD OR TRANSFERRED) WITHOUT LENDER'S PRIOR WRITTEN CONSENT, LENDER MAY REQUIRE IMMEDIATE PAYMENT IN FULL OF ALL SUMS SECURED BY THIS SECURITY INSTRUMENT. HOWEVER, THIS OPTION SHALL NOT BE EXERCISED BY LENDER IF EXERCISE IS PROHIBITED BY APPLICABLE LAW.

IF LENDER EXERCISES THIS OPTION, LENDER SHALL GIVE BORROWER NOTICE OF ACCELERATION. THE NOTICE SHALL PROVIDE A PERIOD OF NOT LESS THAN 30 DAYS FROM THE DATE THE NOTICE IS GIVEN IN ACCORDANCE WITH SECTION 15 WITHIN WHICH BORROWER MUST PAY ALL SUMS SECURED BY THIS SECURITY INSTRUMENT. IF BORROWER FAILS TO PAY THESE SUMS PRIOR TO THE EXPIRATION OF THIS PERIOD, LENDER MAY INVOKE ANY REMEDIES PERMITTED BY THIS SECURITY INSTRUMENT WITHOUT FURTHER NOTICE OR DEMAND ON BORROWER.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
RUSSELL VANDENBERG                    -Borrower

_____ (Seal)
JOANN VANDENBERG                      -Borrower

BY: _____ (Seal)
HIS/HER ATTORNEY IN FACT              -Borrower

_____ (Seal)
                                      -Borrower

PAY TO THE ORDER OF
_____ (Seal)
                                      -Borrower

WITHOUT RECOURSE
BANK OF AMERICA, N.A.
BY: _____ (Seal)
CHRISTINA M. SCHMITT                  -Borrower
ASSISTANT VICE PRESIDENT

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

*(Sign Original Only)*

FORM No. 19 – POWER OF ATTORNEY.

## POWER OF ATTORNEY

JoAnn Gloria Vandenberg
22952 Cedarspring
Lake Forest, CA 92630
     to
Russell Dean Vandenberg
22952 Cedarspring
Lake Forest, CA 92630

After recording, return to (Name, Address, Zip):
JoAnn Gloria Vandenberg
22952 Cedarspring
Lake Forest, CA 92630

SPACE RESERVED
FOR
RECORDER'S USE

STATE OF OREGON,
County of _____ } ss.

I certify that the within instrument was received for recording on _____ at _____ o'clock ____M., and recorded in book/reel/volume No. _____ on page _____ and/or as fee/file/instrument/microfilm/reception No. _____, Records of this County.

Witness my hand and seal of County affixed.

_____
NAME       TITLE

By _____, Deputy.

KNOW ALL BY THESE PRESENTS that I, ____JoAnn Gloria Vandenberg____ have made, constituted and appointed and by these presents do make, constitute and appoint _____ ____Russell Dean Vandenberg____ my true and lawful attorney, for me and in my name, place and stead and for my use and benefit, to

sign, execute, acknowledge and deliver in my name all documents relating to and which may be required in connection with the sale, purchase, financing or refinance of the property located at:

2184 Skyline Drive, Seaside, Oregon 97138
and legally described as:

See attached Exhibit "A"

This power of attorney shall expire on March 30, 2006

giving and granting unto my attorney the full power and authority to do and perform each and every act and thing whatsoever requisite and necessary to be done, as fully, to all intents and purposes, as I might or could do if personally present, hereby ratifying and confirming all that my attorney lawfully does or causes to be done by virtue hereof.

In construing this instrument, and where the context so requires, the singular includes the plural.

DATED __9-26-05__

_____
_____ _JoAnn Gloria Vandenberg_
        JoAnn Gloria Vandenberg

       CALIFORNIA
STATE OF OREGON, County of __Orange__ ) ss.
This instrument was acknowledged before me on __26 September 2005__
         Jo Ann Gloria Vandenberg

ALICE E. IWYEKAWA
Commission # 1435548
Notary Public - California
Orange County
My Comm. Expires Sep 16, 2007

_____
Notary Public for Oregon California
My commission expires __September 16, 2007__

PUBLISHER'S NOTE: Use of this form in connection with real estate may subject the user to real estate licensing requirements. To avoid the need to comply with those requirements: 1) record this form in the county or counties where the real estate is located; 2) specify the address(es) of the property to be managed, controlled, and/or sold; and 3) state that the agent, in dealing with the real property, may not receive any compensation that would require the agent to be licensed under ORS 696 or other applicable law.

"This is a True and Correct Copy of the Original Document which has been sent for Recording"

_____
By: Shane Rogers
Vice President

OPTIONAL BORROWERS PROTECTION PLAN® ADDENDUM ("ADDENDUM")

Account Number: ██████████

Borrower(s):
RUSSELL VANDENBERG
JOANN VANDENBERG

Note or Request Date: ___OCTOBER 13TH, 2005___ "Note Date" Principal Amount of Loan Agreement or Amount Advanced or Transferred under the Fixed Rate Loan Confirmation: $ ___440,000.00___

## IMPORTANT INFORMATION ABOUT BANK OF AMERICA'S BORROWERS PROTECTION PLAN

**This Product is Optional.** Your purchase of Borrowers Protection Plan is optional. Whether or not you purchase Borrowers Protection Plan will not affect your application for credit or the terms of any existing credit agreement you have with Bank of America.

**Termination of Borrowers Protection Plan:** You have the right to cancel Borrowers Protection Plan at any time by making a written request. Bank of America has the right to cancel Borrowers Protection Plan upon sixty (60) days notice to you.

Borrowers Protection Plan will automatically terminate in the following circumstances:
1. Any monthly fee remaining unpaid ninety (90) days after its due date.
2. Your loan is charged off to profit and loss.
3. Your loan is paid off or refinanced.
4. Your loan and its servicing is transferred to an unaffiliated lender.
5. The expiration date (final scheduled payment due date) of your loan is reached, or 120 months of protection, whichever comes first.

**Amount of Fee:** The monthly Fee for the selected Borrowers Protection Plan option is $ ___N/A $113.43___ If you were to pay this monthly Fee for the duration of your loan term or the 120-month maximum term of Borrowers Protection Plan, whichever is less, the total Borrowers Protection Plan fee would be $ ___N/A $13,611.00___

**Eligibility Requirements, Conditions and Exclusions:** There are eligibility requirements, conditions and exclusions that could prevent you from receiving benefits under Borrowers Protection Plan.

You may find a complete explanation of eligibility requirements, conditions and exclusions in the following portions of the Borrowers Protection Plan Addendum:
For Disability protection, refer to Section II; paragraph a, paragraph b, paragraph c and paragraph d.
For Unemployment protection, refer to Section III; paragraph a, paragraph b, paragraph c and paragraph d.
For Accidental Death protection, refer to Section IV; paragraph a, paragraph b, paragraph c and paragraph d.

The undersigned Borrowers acknowledge receipt of the above product disclosures.

_____
RUSSELL VANDENBERG

_____
JOANN VANDENBERG
BY: _____
HIS/HER ATTORNEY IN FACT

**Page 2 must also be completed and signed by all borrowers.**

| Initial Below for Option Selected | Selected Protection Option | Protection Options | Single or Joint | Benefit Period | Monthly Fee * | Monthly Fee as a Percentage of principal and interest | Monthly Payment (includes Fee)* | Total BPP Fee* |
|---|---|---|---|---|---|---|---|---|
| | ☐ 1 | Disability & Accidental Death | Single | 12 MOS | $ 103.12 | 5.000 % | $ 2,165.62 | $ 12,374.40 |
| | ☐ 2 | | Joint | 12 MOS | $ 165.00 | 8.000 % | $ 2,227.50 | $ 19,800.00 |
| ✓ 3QS JU by JU p˄ | ☐ 3 | Involuntary Unemployment & Accidental Death | Single | 12 MOS | $ 113.43 | 5.500 % | $ 2,175.93 | $ 13,611.60 |
| | ☐ 4 | | Joint | 12 MOS | $ 206.25 | 10.000 % | $ 2,268.75 | $ 24,750.00 |
| | ☐ 5 | Disability, Involuntary | Single | 12 MOS | $ 185.62 | 9.000 % | $ 2,248.12 | $ 22,274.40 |
| | ☐ 6 | Unemployment & Accidental Death | Joint | 12 MOS | $ 309.37 | 15.000 % | $ 2,371.87 | $ 37,124.40 |
| ☐0 JU JU by JU por | ☑ 0 | Decline Protection | | 12 MOS | .00 | .000 | .00 | .00 |

(Options 1 and 2, refer to sections I, II and IV for specific details pertaining to these options. Options 3 and 4, refer to sections I, III and IV for specific details pertaining to these options. Options 5 and 6, refer to sections I, II, III and IV for specific details pertaining to these options. If protection is declined, there is no amendment to the Note.)

The above Protection will be provided subject to the terms of this Addendum. Protection will expire on _____ . The Protection is optional and not required to obtain this loan or fixed rate option, and is not a factor in evaluating your application. Each Borrower has read and agreed to the terms of this Addendum.

*If the Note is for a variable or adjustable rate loan, the Monthly Fee and Monthly Payment shown above are based upon the initial monthly payment of principal and interest as shown on the Note, and both amounts are subject to change as described in the Note and this Addendum. The total fee for Protection is an estimate based upon the first 120 monthly payments of principal and interest as shown on your Note.

After reviewing the above information about Borrowers Protection Plan, having full opportunity to read the Addendum and ask questions, I/we make the following choice:

☐ I/We elect single Protection for the Borrower listed below (Applicable for options 1, 3 and 5 only).

_____

☐ I/We elect joint Protection for the two Borrowers listed below (Applicable for options 2, 4 or 6 only).

_____

JU JU by JU PОА
☒ I/We decline to purchase any Protection on this loan. (Applicable to Option 0).

_____
RUSSELL VANDENBERG

_____
JOANN VANDENBERG

BY: _____
HIS/HER ATTORNEY IN FACT

_____

Redacted

Case 12-32800-tmb13    Doc 37    Filed 01/20/15



Recording Instrument #:          200512523
Recorded By: Clatsop County Clerk
# of Pages:   23      Fee:          136.00
Transaction date:   10/14/2005 15:44:01
Deputy: tromeyn

Until a change is requested all tax statements shall be
sent to the following address.
RUSSELL VANDENBERG
2184 SKYLINE DRIVE
SEASIDE, OR 97138

WHEN RECORDED MAIL TO
~~BANK OF AMERICA~~ JACKSONVILLE POST CLOSING
9000 SOUTHSIDE BLVD.
BLDG 700, FILE RECEIPT DEPT.
JACKSONVILLE, FL 32256
TAX ACCOUNT NUMBER

True and Actual Consideration is:
$        440,000.00          ——— [Space Above This Line For Recording Data] ———

LOAN #

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document
are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   OCTOBER 13, 2005          ,
together with all Riders to this document.
(B) "Borrower" is  RUSSELL VANDENBERG AND JOANN VANDENBERG

Borrower is the trustor under this Security Instrument.
(C) "Lender" is   BANK OF AMERICA, N.A.
Lender is a  NATIONAL BANKING ASSOCIATION
organized and existing under the laws of   THE UNITED STATES OF AMERICA
Lender's address is   275 S.VALENCIA AVE. 1ST FLOOR, BREA, CA 928236340

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is    FIRST AMERICAN TITLE INSURANCE COMPANY

OREGON – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3038 1/01

VMP ®-6(OR) (0408)
Page 1 of 16
VMP Mortgage Solutions, Inc. (800)521-7291

Initials: 

CVOR 10/13/05 12:22 PM

 


Pacific Title Company

(E) **"Note"** means the promissory note signed by Borrower and dated   OCTOBER 13, 2005   .
The Note states that Borrower owes Lender   FOUR HUNDRED FORTY THOUSAND AND 00/100
                                                                                        Dollars
(U.S. $      440,000.00   ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than    NOVEMBER 01, 2035    .
(F) **"Property"** means the property that is described below under the heading "Transfer of Rights
in the Property."
(G) **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late
charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The
following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable
final, non-appealable judicial opinions.
(J) **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments
and other charges that are imposed on Borrower or the Property by a condominium association,
homeowners association or similar organization.
(K) **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated
by check, draft, or similar paper instrument, which is initiated through an electronic terminal,
telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial
institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale
transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and
automated clearinghouse transfers.
(L) **"Escrow Items"** means those items that are described in Section 3.
(M) **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or
proceeds paid by any third party (other than insurance proceeds paid under the coverages described
in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of
all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations
of, or omissions as to, the value and/or condition of the Property.
(N) **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or
default on, the Loan.
(O) **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest
under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.)
and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended
from time to time, or any additional or successor legislation or regulation that governs the same
subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and
restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does
not qualify as a "federally related mortgage loan" under RESPA.
(Q) **"Successor in Interest of Borrower"** means any party that has taken title to the Property,
whether or not that party has assumed Borrower's obligations under the Note and/or this Security
Instrument.

Initials: _____

-6(OR) (0408)          2 of 16                                      Form 3038 1/01
    CVOR 10/13/05 12:22 PM

Redacted

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the          COUNTY     of    CLATSOP                             :

           [Type of Recording Jurisdiction]           [Name of Recording Jurisdiction]

"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF."

which currently has the address of
2184 SKYLINE DRIVE                                         [Street]
SEASIDE                  [City], Oregon 97138     [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c)



Redacted

certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of

Initials: ___

Form 3038 1/01

 Redacted

Case 12-32800-tmb13     Doc 37     Filed 01/20/15

such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender

Redacted

determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest

Initials: ___

Redacted

to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

Redacted

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Initials: PU JU by PJ POA

—6(OR) (0408)     Page 8 of 16     Form 3038 1/01

CVOR 10/13/05 12:22 PM

 Redacted

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums

Initials: _____     Form 3038 1/01



Redacted

secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

Initials: _____

 Redacted

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer(s) and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.



Redacted

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Initials:

Redacted



If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall give notice of sale in the manner prescribed by Applicable Law to Borrower and to other persons prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law.

24. Substitute Trustee. Lender may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

25. Attorneys' Fees. As used in this Security Instrument and in the Note, attorneys' fees shall include those awarded by an appellate court.

26. Protective Advances. This Security Instrument secures any advances Lender, at its discretion, may make under Section 9 of this Security Instrument to protect Lender's interest in the Property and rights under this Security Instrument.

27. Required Evidence of Property Insurance.

### WARNING

Unless you provide us with evidence of the insurance coverage as required by our contract or loan agreement, we may purchase insurance at your expense to protect our interest. This insurance may, but need not, also protect your interest. If the collateral becomes damaged, the coverage we purchase may not pay any claim you make or any claim made against you. You may later cancel this coverage by providing evidence that you have obtained property coverage elsewhere.

You are responsible for the cost of any insurance purchased by us. The cost of this insurance may be added to your contract or loan balance. If the cost is added to your contract or loan balance, the interest rate on the underlying contract or loan will apply to this added amount. The effective date of coverage may be the date your prior coverage lapsed or the date you failed to provide proof of coverage.

The coverage we purchase may be considerably more expensive than insurance you can obtain on your own and may not satisfy any need for property damage coverage or any mandatory liability insurance requirements imposed by Applicable Law.

Initials: _____

-6(OR) (0409)     CVOR 10/13/05 12:22 PM     Form 3038 1/01

Redacted

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _Russell Vandenberg_____ (Seal)
                                     RUSSELL VANDENBERG          -Borrower


_____     _JoAnn Vandenberg_____ (Seal)
                                     JOANN VANDENBERG           -Borrower


                                     BY: _Russell Vandenberg_____
_____ (Seal)     HIS/HER ATTORNEY IN FACT _____ (Seal)
                -Borrower                                        -Borrower


_____ (Seal)     _____ (Seal)
                -Borrower                                        -Borrower


_____ (Seal)     _____ (Seal)
                -Borrower                                        -Borrower

Redacted

STATE OF OREGON, _Clackamas_ County ss:

On this 14th day of _October, 05_ , personally appeared the above named _Russell Vandenberg who, being duly sworn did say that he is the Attorney in Fact for JoAnn Vandenberg and that he executed the foregoing instrument both on behalf of himself, as an individual and by authority of and in behalf of said Principal._
and acknowledged the foregoing instrument to be his/her/their voluntary act and deed.

My Commission Expires: _6/20/08_          Before me:

(Official Seal)



OFFICIAL SEAL
CHARIDE RICHARDSON
NOTARY PUBLIC-OREGON
COMMISSION NO. A382254
MY COMMISSION EXPIRES JUNE 28, 2008

_____
Notary Public for Oregon

—6(OR) (0400)          Page 16 of 16          Initials: _RV JVbyRV POA_          Form 3038 1/01

CVOR 10/13/05 12:22 P

 _Redacted_

(Lot 19 as adjusted)

A tract of land being a portion of Lot 18, and all of Lot 19, SUNSET VIEW ESTATES, Plat Records, Clatsop County, Oregon, situated in the Northeast Quarter of Section 22, Township 6 North, Range 10 West, Willamette Meridian, City of Seaside, Clatsop County, Oregon, being further described as follows:

    All of Lot 19, together with an Easement for ingress and egress over Tract "C"

    TOGETHER WITH the following described portion of Lot 18, SUNSET VIEW ESTATES:

    Beginning at the most Northerly common corner to said Lots 18 and 19, said point being marked by a 5/8 inch iron rod with yellow plastic cap stamped "HLB & ASSOC. INC"; thence along the common line between said lots

    South 24 degrees 47 minutes 57 seconds West 133.07 feet to an angle point thereon, said point being marked by a 5/8 inch iron rod with yellow plastic cap stamped "HLB & ASSOC. INC."; thence

    North 79 degrees 05 minutes 00 seconds East 0.49 feet to a 5/8 inch iron rod with yellow plastic cap stamped "Cooter PLS 2829"; thence parallel to the aforementioned common line between Lots 18 and 19

    North 24 degrees 47 minutes 57 seconds East 132.78 feet to a 5/8 inch iron rod with yellow plastic cap stamped "Cooter PLS 2829" on the Southerly line of Tract "C" SUNSET VIEW ESTATES; thence along said Southerly line

    North 65 degrees 07 minutes 53 seconds West 0.40 feet to the Point of beginning.

TOGETHER WITH the following described easement, being a portion of said Lot 18, for ingress and egress and non-exclusive utilities, further described as follows:

    Commencing at the most Northerly common corner to said Lots 18 & 19, said point being marked by a 5/8 inch iron rod with yellow plastic cap stamped "HLB & ASSOC. INC."; thence along the common line between Tract "C" SUNSET VIEW ESTATES and said Lot 18

    South 65 degrees 07 minutes 53 seconds East 6.99 feet to the point of beginning of the easement herein described; thence

    South 36 degrees 19 minutes 33 seconds West 32.70 feet; thence

    South 24 degrees 47 minutes 57 seconds West 43.27 feet; thence     North 62 degrees 39 minutes 14 seconds East 36.87 feet; thence

    North 36 degrees 19 minutes 33 seconds East 47.12 feet to a point on the Southerly line of said Tract "C"; thence along said Southerly line

    North 65 degrees 07 minutes 53 seconds West 25.51 feet to the point of beginning.

 Redacted

LOAN # 

# ADJUSTABLE RATE RIDER

THIS ADJUSTABLE RATE RIDER is made this   13TH   day of OCTOBER, 2005      ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage,
Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note")
to BANK OF AMERICA, N.A.

(the "Lender") of the same date and covering the Property described in the Security
Instrument and located at: 2184 SKYLINE DRIVE, SEASIDE, OR  97138

(Property Address)

THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY
INTEREST RATE AND MY MONTHLY PAYMENT. INCREASES IN THE
INTEREST RATE WILL RESULT IN HIGHER PAYMENTS. DECREASES IN
THE INTEREST RATE WILL RESULT IN LOWER PAYMENTS.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in
the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of       5.625      %. The Note
provides for changes in the interest rate and the monthly payments, as follows:

4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
(A) Change Dates
The interest rate I will pay may change on the  FIRST  day of NOVEMBER, 2010
, and on that day every    12TH       month thereafter. Each date on which my
interest rate could change is called a "Change Date."

(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The
"Index" is:

MULTISTATE ADJUSTABLE RATE RIDER – Single Family   MGNR 10/13/05 12:22 PM 
Page 1 of 6
BS899R (0402)      VMP Mortgage Solutions, Inc. (800)521-7291

*Redacted*

Case 12-32800-tmb13   Doc 37   Filed 01/20/15

THE ONE-YEAR LONDON INTERBANK OFFERED RATE ("LIBOR") WHICH IS THE AVERAGE OF INTERBANK OFFERED RATES FOR ONE-YEAR U.S. DOLLAR-DENOMINATED DEPOSITS IN THE LONDON MARKET, AS PUBLISHED IN THE WALL STREET JOURNAL. THE MOST RECENT INDEX FIGURE AVAILABLE AS OF THE DATE 45 DAYS BEFORE EACH CHANGE DATE IS CALLED THE "CURRENT INDEX."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND ONE-QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the ☐ Nearest ☒ Next Highest ☐ Next Lowest ONE-EIGHTH OF ONE PERCENTAGE POINT ( 0.125 %). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### ☒ Interest-Only Period

The "Interest-only Period" is the period from the date of this Note through NOVEMBER 01 , 2010 . For the interest-only period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to pay the interest which accrues on the unpaid principal of my loan. The result of this calculation will be the new amount of my monthly payment.

The "Amortization Period" is the period after the interest-only period. For the amortization period, after calculating my new interest rate as provided above, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

 Redacted

Case 12-32800-tmb13   Doc 37   Filed 01/20/15

**(D) Limits on Interest Rate Changes**
( **Please check appropriate boxes; if no box is checked, there will be no maximum limit on changes** .)

☐ (1) There will be no maximum limit on interest rate changes.

☐ (2) The interest rate I am required to pay at the first Change Date will not be greater than                    % or less than                    %.

☐ (3) My interest rate will never be increased or decreased on any single Change Date by more than                    percentage points (                    %) from the rate of interest I have been paying for the preceding period.

☒ (4) My interest rate will never be greater than 10.625                    %, which is called the "Maximum Rate."

☐ (5) My interest rate will never be less than                    %, which is called the "Minimum Rate."

☐ (6) My interest rate will never be less than the initial interest rate.

☒ (7) The interest rate I am required to pay at the first Change Date will not be greater than        10.625        % or less than        2.250        %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than  TWO                    percentage points (        2.000        %) from the rate of interest I have been paying for the preceding period.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

 Redacted

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Uniform Covenant 18 of the Security Instrument is amended to read as follows:
(1) WHEN MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE
INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM
COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B(2)
BELOW SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF
THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in
this Section 18, "Interest in the Property" means any legal or beneficial interest
in the Property, including, but not limited to, those beneficial interests
transferred in a bond for deed, contract for deed, installment sales contract or
escrow agreement, the intent of which is the transfer of the title by Borrower
at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or
transferred (or if a Borrower is not a natural person and a beneficial interest in
Borrower is sold or transferred) without Lender's prior written consent, Lender
may require immediate payment in full of all sums secured by this Security
Instrument. However, this option shall not be exercised by Lender if such
exercise is prohibited by Applicable Law. Lender also shall not exercise this
option if: (a) Borrower causes to be submitted to Lender information required
by Lender to evaluate the intended transferee as if a new loan were being made
to the transferee; and (b) Lender reasonably determines that Lender's security
will not be impaired by the loan assumption and that the risk of a breach of any
covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable
fee as a condition to Lender's consent to the loan assumption. Lender also may
require the transferee to sign an assumption agreement that is acceptable to
Lender and that obligates the transferee to keep all the promises and
agreements made in the Note and in this Security Instrument. Borrower will
continue to be obligated under the Note and this Security Instrument unless
Lender releases Borrower in writing.


 Redacted

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(2) UNTIL MY INITIAL FIXED INTEREST RATE CHANGES TO AN ADJUSTABLE INTEREST RATE UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL READ AS FOLLOWS:

TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER. AS USED IN THIS SECTION 18, "INTEREST IN THE PROPERTY" MEANS ANY LEGAL OR BENEFICIAL INTEREST IN THE PROPERTY, INCLUDING, BUT NOT LIMITED TO, THOSE BENEFICIAL INTERESTS TRANSFERRED IN A BOND FOR DEED, CONTRACT FOR DEED, INSTALLMENT SALES CONTRACT OR ESCROW AGREEMENT, THE INTENT OF WHICH IS THE TRANSFER OF TITLE BY BORROWER AT A FUTURE DATE TO A PURCHASER.

IF ALL OR ANY PART OF THE PROPERTY OR ANY INTEREST IN THE PROPERTY IS SOLD OR TRANSFERRED (OR IF BORROWER IS NOT A NATURAL PERSON AND A BENEFICIAL INTEREST IN BORROWER IS SOLD OR TRANSFERRED) WITHOUT LENDER'S PRIOR WRITTEN CONSENT, LENDER MAY REQUIRE IMMEDIATE PAYMENT IN FULL OF ALL SUMS SECURED BY THIS SECURITY INSTRUMENT. HOWEVER, THIS OPTION SHALL NOT BE EXERCISED BY LENDER IF EXERCISE IS PROHIBITED BY APPLICABLE LAW.

IF LENDER EXERCISES THIS OPTION, LENDER SHALL GIVE BORROWER NOTICE OF ACCELERATION. THE NOTICE SHALL PROVIDE A PERIOD OF NOT LESS THAN 30 DAYS FROM THE DATE THE NOTICE IS GIVEN IN ACCORDANCE WITH SECTION 15 WITHIN WHICH BORROWER MUST PAY ALL SUMS SECURED BY THIS SECURITY INSTRUMENT. IF BORROWER FAILS TO PAY THESE SUMS PRIOR TO THE EXPIRATION OF THIS PERIOD, LENDER MAY INVOKE ANY REMEDIES PERMITTED BY THIS SECURITY INSTRUMENT WITHOUT FURTHER NOTICE OR DEMAND ON BORROWER.

 Redacted

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
RUSSELL VANDENBERG                                               −Borrower

_____ (Seal)
JOANN VANDENBERG ← BY: _____  −Borrower
                              HIS/HER ATTORNEY IN FACT

_____ (Seal)
                                                                      −Borrower

_____ (Seal)
                                                                      −Borrower

_____ (Seal)
                                                                      −Borrower

_____ (Seal)
                                                                      −Borrower

_____ (Seal)
                                                                      −Borrower

_____ (Seal)
                                                                      −Borrower

BS899R (0402)                 Page 6 of 6          MGNR 10/13/05 12:22 PM

 Redacted

B6A (Official Form 6A) (12/07)

IN RE <u>Vandenberg, Russell Dean & Vandenberg, JoAnn Gloria</u>                    Case No. _____
                          Debtor(s)                                                                                    (If known)

## SCHEDULE A - REAL PROPERTY

Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether the husband, wife, both, or the marital community own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

**Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.**

If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. See Schedule D. If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| DESCRIPTION AND LOCATION OF PROPERTY | NATURE OF DEBTOR'S INTEREST IN PROPERTY | HUSBAND, WIFE, JOINT, OR COMMUNITY | CURRENT VALUE OF DEBTOR'S INTEREST IN PROPERTY WITHOUT DEDUCTING ANY SECURED CLAIM OR EXEMPTION | AMOUNT OF SECURED CLAIM |
|---|---|---|---|---|
| **2184 Skyline Dr**<br>**Seaside, OR 97138** | Homestead | J | 450,000.00 | 424,355.71 |
| **22952 Cedarspring**<br>**Lake Forest, CA 92630** | Rental property | J | 480,000.00 | 619,601.63 |
| | | TOTAL | 930,000.00 | |

(Report also on Summary of Schedules)

© 1993-2011 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

B6D (Official Form 6D) (12/07)

IN RE <u>Vandenberg, Russell Dean & Vandenberg, JoAnn Gloria</u>     Case No. _____
       Debtor(s)                                                          (If known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

<div style="writing-mode: vertical-lr">© 1993-2011 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only</div>

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. ▇<br>**Bank Of America**<br>P.O. Box 5170<br>Simi Valley, CA  93062-5170 | | J | Mortgage<br>2184 Skyline Dr<br>Seaside, OR 97138<br><br>VALUE $ **450,000.00** | | | | **424,355.71** | |
| ACCOUNT NO. ▇<br>**Bank of America**<br>P.O. Box 26078<br>Greensboro, NC  27420 | | J | Second mortgage<br>22952 Cedarspring<br>Lake Forest, CA 92630<br><br>VALUE $ **480,000.00** | | | | **109,690.98** | **109,690.98** |
| ACCOUNT NO. ▇<br>**Chase**<br>P.O. Box 78420<br>Phoenix, AZ  85252-8420 | | J | Mortgage<br>22952 Cedarspring<br>Lake Forest, CA 92630<br><br>VALUE $ **480,000.00** | | | | **509,910.65** | **29,910.65** |
| ACCOUNT NO.<br><br> | | | <br><br>VALUE $ | | | | | |

_____ **0** continuation sheets attached

| | Subtotal (Total of this page) | $ **1,043,957.34** | $ **139,601.63** |
|---|---|---|---|
| | Total (Use only on last page) | $ **1,043,957.34** | $ **139,601.63** |
| | | (Report also on Summary of Schedules.) | (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.) |

 Redacted

UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

| | | |
|---|---|---|
| In re | ) | Case No. _____ |
| | ) | (NOTE:  If blank, Case No. will be |
| RUSSEL VANDNBERG | ) | on the Meeting of Creditors Notice) |
| JOANN VANDENBERG | ) | |
| | ) | **CHAPTER 13 PLAN DATED** ___04/13/12___ |
| Debtor(s) | ) | ☐ MOTION TO VALUE COLLATERAL |
| | | ☐ MOTION TO AVOID LIENS |
| | | ☐ SECURED CLAIM AMOUNT LIMITED WITH CREDITOR CONSENT |
| | | *[MARK above IF applicable]* |

1.  The debtor shall pay to the trustee (a) a periodic payment of $450 _____
   every_____ **month** _____(insert either month or
   quarter); (b) all proceeds from avoided transfers, including proceeds from transfers avoided by the trustee; (c) upon receipt by the debtor,
   all net tax refunds attributable to prepetition tax years and net tax refunds attributable to postpetition tax years (i.e., tax refunds not
   included on Schedule I, less tax paid by debtor for a deficiency shown on any tax return for that same tax year or tax paid by setoff by
   a tax agency for a postpetition tax year) received during: ☐ The life of the plan, or ☐ 36 or ☒ 60 months from the date the first plan
   payment is due *(Check the applicable provision; if neither is checked, "for the life of the plan" applies)*; (d) a lump sum payment of
   $_____NA_____on or before _____(date); and (e)_____
   _____.

   Debtor acknowledges that if the debtor is ever more than 30 days delinquent on any payment due under section 1(a) of this plan, upon
   motion of the trustee granted by the court after appropriate notice, a wage deduction order to debtor's employer may be issued
   immediately.

2.  The trustee shall apply all funds received pursuant to pt. 1 as follows:
   (a)  First, to the trustee's commission and expenses.
   (b)  Second, with respect to secured creditors, the terms of the debtor's prepetition agreement with each secured creditor shall continue
        to apply, except as otherwise provided in this plan or in the confirmation order.  Secured creditors shall retain their liens until the
        payment of the underlying debt, determined under nonbankruptcy law, or discharge under §1328, as appropriate.  Any allowed
        secured claims will be paid as shown below.  Should the trustee not have sufficient funds in trust to pay fully the disbursements
        listed below, disbursements of funds available shall be made pro rata.

   (1)  If a creditor is not fully secured, the unsecured portion of the creditor's claim shall be treated under the provisions of pt. 2(e)
        and (f) if the claim identifies the priority position of the claim, and, if not, under the provisions of pt. 2(f) only.  HOWEVER, THE
        CLAIMS OF CREDITORS SECURED BY PURCHASE MONEY SECURITY INTERESTS IN (i) A MOTOR VEHICLE
        ACQUIRED FOR PERSONAL USE BY THE DEBTOR(S) WITHIN 910 DAYS PRECEDING THE FILING DATE OF THE
        PETITION, OR (ii) ANY OTHER PERSONAL PROPERTY COLLATERAL ACQUIRED WITHIN ONE (1) YEAR PRECEDING
        THE FILING DATE OF THE PETITION SHALL BE TREATED AS FULLY SECURED except as provided in pt. (b)(2) below,
        if applicable.  The following also apply:

        From the payments received pursuant to pt. 1, if a claim has been timely filed and allowed as secured, make payments to the
        following holders of such claims as detailed below.   ESTIMATED PREPETITION ARREARAGES, IF CURING AND
        REINSTATING, MUST BE SHOWN BELOW. THE ARREARAGES SHOWN IN A TIMELY FILED AND ALLOWED SECURED
        CLAIM SHALL CONTROL.

| Creditor | Collateral | Estimated Arrearage if Curing | Collateral Value if Not Paying in Full | Estimated Total Debt if Paying Debt in Full | Post-confirmation Interest Rate | Equal Monthly Payments |
|---|---|---|---|---|---|---|
| NONE | | | | | | |

   If the collateral is not to be sold, and the provisions in capital letters above governing claims of creditors with
   purchase money security interests in personal property do not apply, the value of the collateral, where the debtor is
   not paying the debt in full, shall be fixed in the amount stated above for purposes of administration of this plan as

well as for purposes of determining the amount of any secured claim, if undersecured, unless objected to at or before the first date set for the confirmation hearing on this plan or, if applicable, prior to expiration of time to object to any proposed modified plan, in which case the value will be determined by the court. If the collateral is to be sold, the value shall be the sales price. The debtor MOVES the court for an order so fixing the value of the collateral. Otherwise, the creditor's proof of claim shall control.

(2) **DEBTOR PROPOSES THAT THE CREDITOR(S) SPECIFICALLY IDENTIFIED BELOW AGREE TO THE FOLLOWING TREATMENT WHICH THE COURT MIGHT NOT BE ABLE TO APPROVE ABSENT CONSENT OF CREDITOR(S). FAILURE OF CREDITOR TO FILE A WRITTEN OBJECTION TO THIS PLAN PRIOR TO CONFIRMATION SHALL CONSTITUTE ACCEPTANCE OF FORTH ABOVE.**

From the payments received pursuant to pt. 1, if a claim has been timely filed and allowed as secured, make payments to the following holders of such claims as detailed below. ESTIMATED PREPETITION ARREARAGES, IF CURING AND REINSTATING, MUST BE SHOWN BELOW.

| Creditor | Collateral | Estimated Arrearage if Curing | Collateral Value if Not Paying in Full | Estimated Total Debt if Paying Debt in Full | Post-confirmation Interest Rate | Payment Provisions |
|----------|-----------|------------------|------------------|------------------|------------------|------------------|
| NONE | | | | | | |

If the collateral is not to be sold, for purposes of administration of this plan and case, the secured claim shall be limited to the value of the collateral stated above unless creditor objects at or before the first date set for the confirmation hearing on this plan or, if applicable, prior to expiration of time to object to any proposed modified plan, in which case the value will be determined by the court. The debtor MOVES the court for an order so fixing the value of the collateral. If the collateral is to be sold, the value shall be the sales price.

(3) Adequate protection payments shall be disbursed by the trustee pre-confirmation from funds on hand with the trustee in the payment amounts specified in the plan for personal property secured creditors, absent a provision in this plan or a court order providing for a different amount to be paid pre-confirmation. If the debtor fails to make a monthly payment sufficient to pay the adequate protection payments in full, the trustee will disburse the funds pro rata according to the monthly payments proposed for those creditors. Adequate protection payments paid through the trustee pre-confirmation will be deducted from the amount of the allowed claim. Unless the concerned creditor is fully secured or oversecured for purposes of §506 or §1325(a)(9), no interest shall be paid from the date of the filing of the petition to the date of confirmation unless otherwise specifically provided for in the payment provisions set forth above.

(4) Attorney Fees: Original attorney fees are $3250_____; of which $2,957_____remains unpaid. Said fees are to be paid either: ☐ From all available funds after pt. 2(b) payments are made; or ☒ Other -
All attorney fees, including supplemental fees, are to be paid from all available funds after any fixed monthly payments in paragraph 2(b) are made.

(5) The debtor shall surrender any collateral not otherwise addressed by the terms of this plan no later than upon confirmation of this plan to the following (i.e., state creditor NAME followed by DESCRIPTION of collateral to be surrendered):
NONE

(c) Third, pro rata until fully paid, allowed unsecured domestic support obligations.
(d) Fourth, allowed administrative expenses under §507(a)(2).
(e) Fifth, pro rata, until fully paid, to allowed priority claims in the order stated in §507(a)(3)-(10), including §1305 claims, unless otherwise ordered.
(f) Sixth, pro rata, to timely filed and allowed nonpriority unsecured claims, the amounts required by §1325(b)(1). These monies will be distributed in the method indicated in the section marked below [MARK ONLY ONE]. The terms of pt. 8 shall also apply.
  ☒(1) The creditors will receive approximately _____2_____% of their claims. Payment of any dividend will depend upon secured claims at the time of confirmation, the total amount of allowed claims, and the costs of administration, including all allowed attorneys' fees of the debtor.
  ☐(2) The creditors will receive a minimum _____% of their claims. This percentage will not be reduced despite the amount of total creditors' claims filed.

1300.05 (10/17/05) **Page 2 of 4**          [NOTE: Printed text may **NOT** be stricken!]

(g) [Not Applicable if NA inserted in the blank] Pursuant to §1325(a)(4), the "best interest of creditors" number is determined to be $0_____, and not less than that amount shall be distributed to unsecured creditors.

(h) [Not Applicable if NA is inserted in the blank] Pursuant to §1325(a)(4), all allowed unsecured claims shall receive interest of ___NA___% from the time of confirmation.

3. The debtor ASSUMES the following executory contracts and leases:

Creditor      Amount of Default [State if None]  Cure Provisions
NONE

Those executory contracts or leases not specifically mentioned above are treated as rejected. Any timely filed and allowed claim arising from rejection shall be treated under pt. 2(f). The debtor will pay all assumed executory contracts and leases directly, including amounts required to cure. The debtor shall surrender any property covered by rejected executory contracts or leases to the affected creditor no later than upon confirmation of this plan.

4. The debtor shall pay directly to each of the following creditors, whose debts are either fully secured or are secured only by a security interest in real property that is the debtor's principal residence, the regular payment due postpetition on these claims in accordance with the terms of their respective contracts, list any prepetition arrearages in pt. 2(b), and/or specify any other treatment of such secured creditor(s) in an additional pt. at the end of this plan:

Creditor    Property Location     Payment
Bank of America  2184 Skyline Dr., Seaside, OR 97138  per contract

Chase     22952 Cedarspring, Lake Forest, CA 92630 per contact

5. Subject to the provisions of §502, untimely claims are disallowed, without the need for formal objection, unless allowed by court order.

6. (a)  The debtor MOVES, pursuant to §522(f)(1)(A), to avoid the judicial liens of the following creditors because they impair an exemption(s) of the debtor:
NONE

(b)  The debtor MOVES, pursuant to §522(f)(1)(B), to avoid the non-purchase money security interests of the following creditors because they impair an exemption(s) of the debtor:
NONE

Absent objection from a creditor, filed prior to the first date set for the confirmation hearing on this plan, the order of confirmation will avoid its lien and its claim will be treated in pt. 2(f).

7. Except as otherwise provided herein, postpetition interest on all unsecured claims is disallowed. Interest continues to accrue on debts that are excepted from discharge.

8. [To be completed if plan will not be completed until more than 36 months after the first plan payment due under the originally filed plan.] The approximate length of the plan is ___60___ months; cause to extend longer than 36 months is as follows:
Applicable commitment period

Except as otherwise explicitly provided by pt. ___NA___, Debtor(s) shall make plan payments for 36 months, unless the debtor(s) pays 100% of all allowed claims with appropriate interest,except the plan payments shall continue for more than 36 months to the extent (1) the plan proposes a longer period, not to exceed 60 months, as necessary to complete required payments to creditors, or (2) §1322(d)/1325(b) requires plan payments for a longer period.

9. This plan may be altered postconfirmation in a non-material manner by court order after notice to the debtor, the trustee, any creditor whose claim is the subject of the modification and any interested party who has requested special notice.

10. Debtor(s) certifies that all postpetition domestic support obligations have been paid in full on the date of this plan and will be paid in full at the time of the confirmation hearing.

11.    Debtor(s) further certifies that the petition was filed in good faith, and this plan was proposed in good faith and not by any means forbidden by law.

12.    Pursuant to §506(a), and within 60 days after confirmation, debtors will file an adversary proceeding or motion to void the junior lien held by Bank of America in the real property located at  22952 Cedarspring, Lake Forest, CA 92630. Entry of the Order Confirming Plan is not res judicata with respect to this lien.

_____
/s/ Russell Vandenberg
DEBTOR

_____
/s/ JoAnn Vandenberg
DEBTOR

IN ORDER TO ASSURE PROPER SERVICE ON ALL CREDITORS LISTED IN pts. 2(b)(1), 2(b)(2) OR 6 OF THE PLAN pursuant to FRBPs 3012, 4003(d), 9014 and 7004: (a) I LISTED ON THE MAILING MATRIX such creditors, other than insured depository institutions, in care of a person or entity authorized to be served; AND (b) I SERVED VIA CERTIFIED MAIL, ON ____04/13/12____, COPIES OF THIS PLAN ON any insured depository institution(s) affected by pts. 2(b)(1), 2(b)(2), or 6 of the Plan [FRBP 7004(h)]; AND (c) THE FOLLOWING LIST SEPARATELY IDENTIFIES all such creditors served via matrix listing and such creditors served via certified mail INCLUDING the names AND addresses of ALL such creditors served (NOTE:  With respect to creditors served via matrix listing, the list of names and addresses IS IDENTICAL to that included in the matrix):

_____
/s/Ian Shearer
DEBTOR OR DEBTOR'S ATTORNEY

1300.05 (10/17/05)  **Page 4 of 4**            [NOTE: Printed text may **NOT** be stricken!]



APN # 61022AB02800

When recorded mail to:
Bank of America
P.O. Box 660933
Dallas, TX 75266-0933

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY

M&H# OR ▬▬▬

Space above this line for recorders use

## Assignment of Deed of Trust

For value received, the undersigned corporation hereby grants, assigns, and transfers to **National Residential Assets Corp.** all beneficial interest under that certain Deed of Trust dated 10/13/2005 executed by **Russell Vandenberg anf Joann Vandenberg**, as Trustor(s) to **First American Title Insurance Company**, as Trustee and recorded as Instrument No. 200512523 on 10/14/2005, in Book xx, Page xx of Official Records, in the office of the County Recorder of **CLATSOP** County, **OREGON** commonly referred to as **2184 Skyline Dr, Seaside, OR 97138** and legally describing land therein as:

Attached as Exhibit "A"

Dated: April 30, 2012

Bank of America, N.A.

*Arkina Wilson*
Name: Arkina Wilson
Title: Assistant Vice President

ACKNOWLEDGMENT:

STATE OF ___TEXAS___
COUNTY OF ___DALLAS___

On April 30, 2012 before me, Jiju K. Thomas Notary Public, personally appeared Arkina Wilson who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) (is)/are subscribed to the within instrument and acknowledged to me that he/(she)/they executed the same in his/(her)/their authorized capacity(ies), and that by his/(her)/their signature(s) on the instrument the person(s), or the entity upon the behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the Laws of the State of _TEXAS_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ___Jiju Thomas___
_Jiju K. Thomas_

JIJU K. THOMAS
MY COMMISSION EXPIRES
July 22, 2015

(Place Notary Seal Above)

Page 1 of 2 - 2184 Skyline Dr, Seaside, OR 97138

 Redacted

# Exhibit "A"

(Lot 19 as adjusted)

A tract of land being a portion of Lot 18, and all of Lot 19, SUNSET VIEW ESTATES, Plat Records, Clatsop County, Oregon, situated in the Northeast Quarter of Section 22, Township 6 North, Range 10 West, Willamette Meridian, City of Seaside, Clatsop County, Oregon, being further described as follows:

All of Lot 19, together with an Easement for ingress and egress over Tract "C"

TOGETHER WITH the following described portion of Lot 18, SUNSET VIEW ESTATES:

Beginning at the most Northerly common corner to said Lots 18 and 19, said point being marked by a 5/8 inch iron rod with yellow plastic cap stamped "HLB & ASSOC, INC"; thence along the common line between said lots

South 24 degrees 47 minutes 57 seconds West 133.07 feet to an angle point thereon, said point being marked by a 5/8 inch iron rod with yellow plastic cap stamped "HLB & ASSOC, INC."; thence

North 79 degrees 05 minutes 00 seconds East 0.49 feet to a 5/8 inch iron rod with yellow plastic cap stamped "Cooter PLS 2829"; thence parallel to the aforementioned common line between Lots 18 and 19

North 24 degrees 47 minutes 57 seconds East 132.78 feet to a 5/8 inch iron rod with yellow plastic cap stamped "Cooter PLS 2829" on the Southerly line of Tract "C" SUNSET VIEW ESTATES; thence along said Southerly line

North 65 degrees 07 minutes 53 seconds West 0.40 feet to the Point of beginning.

TOGETHER WITH the following described easement, being a portion of said Lot 18, for ingress and egress and non-exclusive utilities, further described as follows:

Commencing at the most Northerly common corner to said Lots 18 & 19, said point being marked by a 5/8 inch iron rod with yellow plastic cap stamped "HLB & ASSOC, INC."; thence along the common line between Tract "C" SUNSET VIEW ESTATES and said Lot 18

South 65 degrees 07 minutes 53 seconds East 6.99 feet to the point of beginning of the easement herein described; thence

South 36 degrees 19 minutes 33 seconds West 32.70 feet; thence

South 24 degrees 47 minutes 57 seconds West 43.27 feet; thence        North 62 degrees 39 minutes 14 seconds East 35.87 feet; thence

North 36 degrees 19 minutes 33 seconds East 47.12 feet to a point on the Southerly line of said Tract "C"; thence along said Southerly line

North 65 degrees 07 minutes 53 seconds West 25.51 feet to the point of beginning.

 Redacted